# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
### AT CHATTANOOGA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Case No. 1:22-cr-51 |
| | ) | |
| v. | ) | Judge Atchley |
| | ) | |
| MICHAEL SHANE DYER | ) | Magistrate Judge Steger |

### MEMORANDUM OPINION AND ORDER

Before the Court is the Report and Recommendation [Doc. 90] of U.S. Magistrate Judge Christopher H. Steger, recommending that (1) the search warrant at issue in this case be validated under *Franks v. Delaware*, 438 U.S. 154, 171 (1978), and (2) Defendant's Motion to Suppress [Doc. 27] be denied. Defendant has filed Objections [Doc. 91] to the Report and Recommendation ("R&R). For reasons that follow, Defendant's objections will be **SUSTAINED IN PART** and **OVERRULED IN PART**. The Report and Recommendation [Doc. 90] will be **MODIFIED IN PART** and, as modified, **ACCEPTED AND ADOPTED**. The search warrant will be **VALIDATED** and Defendant's Motion to Suppress [Doc. 27] **DENIED**.

## I.     STANDARD OF REVIEW

The Court is required to perform *de novo* review of any objections to an R&R. 28 U.S.C. § 636(b); *United States v. Quinney*, 238 F. App'x 150, 152 (6th Cir. 2007) ("It is well-settled that upon proper objection by a party, a district court must review de novo a magistrate judge's ruling on a motion to suppress."). The Court can accept, modify, or reject the findings or recommendations – in whole or in part. *United States v. Robinson*, 2007 WL 2139635, at *1 (E.D. Tenn. July 23, 2007).

1

## II.      FACTUAL AND PROCEDURAL BACKGROUND

On January 26, 2022, police executed a search warrant at Defendant Michael Shane Dyer's home in Marion County, Tennessee. [Doc. 27-1]. Charlie Rittenberry, an agent of the 12th Judicial District Drug and Violent Crime Task Force, submitted an Affidavit in Support of Search Warrant. [*Id.*]. The affidavit, warrant, and exhibits identify 932 Sequatchie Mountain Road as Dyer's residence, the location of a controlled buy of methamphetamine, and, with other descriptors, the place to be searched. The search warrant was issued by Magistrate Mark Raines on January 21, 2022. [*Id.*]. In his Motion to Suppress [Doc. 27], Defendant seeks to suppress all evidence seized during the search.

Defendant also filed a Motion for Franks Hearing [Doc. 51], arguing, *inter alia*, that the search warrant affidavit (the "Affidavit") falsely identifies 932 Sequatchie Mountain Road as Defendant's residence address. It is undisputed that 932 Sequatchie Mountain Road is not Defendant's correct address. Concluding Defendant had made a substantial preliminary showing that the Affidavit contained statements made with reckless disregard for the truth and/or an intent to mislead, [Doc. 59 at 5-6], Magistrate Judge Steger held a *Franks* hearing on August 22, 2023. [Doc. 83].

On October 24, 2023, Judge Steger issued a Report and Recommendation [Doc. 90], recommending that the search warrant be validated under *Franks v. Delaware* and Defendant's Motion to Suppress [Doc. 27] be denied. Defendant timely objected. Following an unopposed motion to extend time to respond from each party, the Government responded [Doc. 95], Defendant replied on December 14, 2023 [Doc. 98], and this matter became ripe for review.

## III.      CONTENTS OF AFFIDAVIT

The Affidavit includes "Factual basis supporting probable cause" and "Conclusion" sections.

They are set forth in their entirety below, with Defendant's proposed excisions underlined and in italics. [*See* Doc. 91 at 22-23].

1. In the past 72 hours your Affiant utilized a confidential source "CS" to purchase methamphetamine from Michael S. Dyer "DYER" *at his residence at 932 Sequatchie Mountain Rd, Sequatchie, TN.*

2. Prior to the purchase, Agents met the CS at an undisclosed meeting location and provided the CS with pre-recorded confidential funds and a covert audio monitoring device.

3. Agents checked the CS and the CS's vehicle for any preexisting contraband and had negative results.

4. Agents followed *the CS to DYER's residence* and monitored the CS pull in the driveway.

5. Agents monitored the CS during the controlled purchase via live audio monitoring have conversation with Dyer regarding purchasing methamphetamine.

6. Agents monitored the CS *leave DYER's residence* and then followed the CS to an undisclosed meeting location for debriefing and recovered the methamphetamine purchased.

7. The CS stated that DYER had more methamphetamine *in the residence* than what he sold the CS. Agents corroborated the CS's debriefing with what was heard on live audio monitoring.

8. The methamphetamine purchased from DYER was consistent in appearance with other methamphetamine your Affiant has encountered and tested positive for methamphetamine with Tru Narc drug identifier.

9. DYER has 4 prior Tennessee Felony Drug Convictions as well as a Felon in possession of a firearm conviction.

10. *932 Sequatchie Mountain Rd is the address listed with Marion County Sheriff's Department and Marion County Clerk as DYER's address.*

## Conclusion

Your Affiant believes based on the evidence set out in the affidavit, Michael S. Dyer is engaged in methamphetamine distribution *at his residence 932 Sequatchie Mountain Rd, Sequatchie, TN.*

[Doc. 27-1 at 3-4]. This is followed by a prayer seeking authorization to search the premises described in Exhibit B to recover, *inter alia*, items described in Exhibit A, and then the signatures of Officer Rittenberry and Judge Raines. [*Id.* at 4].

The pertinent text of Exhibit B is as follows, with Defendant's proposed excisions italicized and underlined:

**Exhibit "B" to search warrant and to affidavit**

***Target residence: 932 Sequatchie Mountain Rd. Sequatchie, TN***

**Starting at the intersection of Valley View Hwy and Sequatchie Mountain Road, travel Northwest on Sequatchie Mountain Rd approximately 0.84 miles. The driveway to the *target residence* will be on the right-hand side of the road. Take the gravel/dirt driveway approximately 300 yards until reaching the target residence in a wooded area. The *residence* is a cabin style home with brown wooden log siding. A picture of the target residence will be posted below.**
***The 911 address to the property shares a driveway with another residence.***
**The below listed GPS coordinates more specifically identifies the location of the residence to be searched.**
**LAT: 35.120950**
**Long: -85.606261**

[Doc. 27-1 at 7]. There is a photograph on the bottom half of the page that depicts two structures from a distance. [*Id.*].

4

## IV.    SUMMARY OF R&R AND OBJECTIONS

Judge Steger first held that inclusion of the incorrect address "932 Sequatchie Mountain Road" was neither intentionally nor recklessly misleading. [Doc. 90 at 5]. He then addressed the truthfulness of Agent Rittenberry's averment that the "911 address to the property shares a driveway with another residence." Based on Rittenberry's testimony, Judge Steger concluded there was no intent to mislead. [*Id.* at 5]. He acknowledged, however, that this phrase could have misled the magistrate to believe that the 911 system had been used to verify the address, when in fact it had not. [*Id.*].

The R&R does not recommend that any portion of the Affidavit be excised under *Franks*. But for the sake of argument, Judge Steger also analyzed a hypothetical affidavit that would omit statements challenged by Defendant. The hypothetical affidavit would omit (i) all reference to the street number "932," (ii) part of the turn-by-turn directions, (iii) the visual description of the residence,[1] and (iv) reference to the "911 address." Based on the hypothetical affidavit, Judge Steger found that there was sufficient support for the reliability of the confidential source ("CS") and sufficient specificity as to Defendant's residence to establish a nexus between the controlled buy and Defendant's residence. [Doc. 90 at 8-9].

Turning to the Motion to Suppress, Judge Steger found there was a sufficient nexus between drug activity and the Defendant's residence. In so holding, he concluded that the Affidavit should be read in light of the more particular descriptors in Exhibit B, including the GPS

---

[1] In his objection, Defendant argues that the photograph of the house was insufficient to identify the depicted building based on the similarities between Dyer's house and his mother's. [Doc. 91 at 15-16]. It does not appear that he seeks excision of either the photograph or the visual description of the house as a "cabin style home with brown wooden log siding." [Doc. 91 at 23]. He simply argues that the photograph does not support the conclusion that the descriptors in Exhibit B are accurate. [*Id.* at 23]. Because Defendant does not challenge the particularity of the search warrant or seek excision of the visual descriptors or photograph, the Court has no occasion to address this issue.

5

coordinates. He further found that the warrant application established the reliability of the CS, that the controlled buy was not stale, and that, in the alternative, the good faith exception would apply.

Defendant objects to most of the findings and conclusions in the R&R. The objection is not a model of clarity, addressing first the probable cause analysis, then the *Franks* analysis, then the hypothetical affidavit, a second *Franks* analysis, and finally, another suppression/nexus analysis based on the reliability of the CS. Defendant first contends that the four corners of the Affidavit do not establish probable cause to search Dyer's residence. [Doc. 91 at 4-10]. Defendant asserts that Exhibit B is not incorporated into the Affidavit and so the Magistrate Judge erred in considering it in his probable cause or nexus analysis.

Turning to the *Franks* issues, Defendant contends that the Court failed to make findings of fact regarding whether the statements in the Affidavit were made with reckless disregard for the truth. [Doc. 91 at 10-11]. Defendant argues that all references to "932" being Dyer's residence should be removed because Officer Rittenberry did not believe that this was the address for Dyer's residence and his mother's, and it was therefore made with reckless disregard for the truth. [*Id.* at 11]. He challenges as erroneous the Court's finding that it is common in rural areas to have an address with more than one residence on the property, as well as the accuracy of the turn by turn directions. After arguing that Magistrate Raines was misled into believing that 932 Sequatchie Mountain Road was the place to be searched [*Id.* at 7-8], Defendant maintains that Magistrate Judge Steger applied the wrong standard in finding that Magistrate Raines was not materially misled by the address [*Id.* at 17-19].

Next, Defendant says the Court erred in analyzing a hypothetical affidavit. According to Defendant, the hypothetical affidavit should have been the Court's finding, except (1) the association of the GPS coordinates with Dyer's residence, and (2) the incorporation of these

coordinates in the "Affidavit" portion of the warrant application. [*Id.* at 17-18]. Defendant contends that the Magistrate Judge should not have included any information in Exhibit B in his analysis of the Affidavit, and that in any event, his analysis conflates the location to be searched with the probable cause statements in the Affidavit. [*Id.* at 18]. Defendant then restates his arguments regarding the falsity of the statements in the Affidavit and proposes an excised Affidavit. Defendant's proposed excisions would eliminate all references to Dyer's "residence" in the Affidavit, even those that do not include the 932 address. [*Id.* at 22-23].

Defendant next contends the Affidavit fails to establish the veracity and reliability of the CS and the Magistrate Judge erred in finding otherwise. [Doc. 91 at 24-35]. Finally, Defendant argues the good faith exception should not apply because the Affidavit is bare bones and fails to set forth the minimal nexus required to support an officer's good faith belief in its validity. [*Id.* at 31-32].

For its part, the Government contends there is no error in the R&R—no portions of the Affidavit should be excised, Exhibit B is incorporated into the Affidavit, the CS's reliability was established, and the Affidavit establishes probable cause to search because there was a nexus between the Dyer's residence and drug activity. In the alternative, the Government maintains that the warrant should be upheld under the *Leon* good faith exception because the Affidavit establishes a minimal nexus between criminal activity and the location to be searched.

The Court will first address Defendant's contentions under *Franks v. Delaware* to determine the appropriate contents of the Affidavit, and then the Motion to Suppress.

## V. *FRANKS V. DELAWARE* ANALYSIS

The record reflects that (1) Dyer's residence address is 948 Sequatchie Mountain Road, not 932 Sequatchie Mountain Road; (2) Dyer's residence is more than 300 yards from the

intersection of the driveway and Sequatchie Mountain Road; and (3) Officer Rittenberry did not consult the 911 system to determine Dyer's address. At the hearing, counsel represented that Defendant is not contending that Rittenberry made an intentionally false statement in the Affidavit, but that these statements were made with reckless disregard for the truth. [Doc. 85 at 179-180].

To be entitled to a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978), a defendant must make a "substantial preliminary showing" that: (1) the warrant affidavit includes a false statement made either knowingly and intentionally or with reckless disregard for the truth; and (2) the allegedly false statement is necessary to the finding of probable cause. *Id.* at 155-56. "In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit." *Id.* at 156. The Sixth Circuit has explained:

> A Franks analysis turns on two questions of fact, and one of law. The two questions of fact: One, is there a false statement included in an affidavit? If so, then two, how culpable is the affiant officer in including that statement in the affidavit? Where the affidavit does include a false statement, and where the officer making the statement was culpable in doing so, then the court turns to a question of law: After excising the false statement, is there sufficient information in the affidavit to constitute probable cause to issue a warrant?

*United States v. Crawford*, 943 F.3d 297, 309 (6th Cir. 2019).

An officer "displays reckless disregard for the truth when he subjectively 'entertains serious doubt as to the truth of his allegations.'" *United States v. Cican*, 156 F. Supp. 2d 661, 666 (E.D. Mich. 2001) (quoting *United States v. Whitley*, 249 F.3d 614, 621 (7th Cir. 2001)). A court may infer recklessness "from circumstances evincing obvious reasons to doubt the veracity of the allegations." *Id.*

8

### *932 Sequatchie Mountain Road*

The evidence at the *Franks* hearing demonstrated significant confusion regarding the correct address for Dyer's residence at the time the Affidavit was sworn in January 2022. Mr. Dyer's house shares a driveway with the home of his mother, Rhonda Caldwell. The dirt and gravel driveway begins at Sequatchie Mountain Road and gains elevation. A left turn off the driveway leads to Ms. Caldwell's residence. The driveway continues upwards, curving to reach Mr. Dyer's property, which includes an outbuilding and a residence. These are the only two residences off the driveway. Continuing northwest on Sequatchie Mountain Road about 25 yards past the shared driveway, there is a short gravel driveway with a gate across it and no house visible from the road. [*Id.* at 12, 14; Def's Hrg. Ex. 2]

Officer Rittenberry testified that he wrote his Affidavit in June 2022 after the controlled buy. He consulted the Marion County Sheriff's Office records, the Marion County Clerk's Office records, and Google maps. [Doc. 85 at 79-83]. He first saw that 932 Sequatchie Mountain Road was listed as Dyer's address on multiple arrest records from the Marion County Sheriff's Office. [Doc. 85 at 79-80; Govt. Hrg. Ex. 2]. Rittenberry testified that he saw the same address for Dyer in the Marion County Clerk's system. [*Id.*]. He then searched 932 Sequatchie Mountain Road in Google maps. [Doc. 85 at 83]. He testified that running that search dropped a pin "right near the driveway of where the controlled buy took place," [*Id.* at 215], but not "directly on top of either one of the residences." [*Id.* at 83].

Rittenberry knew at the time of the Affidavit that there were two residences that shared the same driveway and included this information in Exhibit B. [*Id.* at 80]. He testified that in his experience, it was very common in rural counties for there to be multiple structures, cabins, trailers, etc., on a property with one address. [Doc. 85 at 82]. Because the 932 address only marked an area

near the driveway without differentiating between the residences, Officer Rittenberry also included turn-by-turn directions, a description of the house, a photograph of the house, and GPS coordinates to specifically identify the house to be searched. [*Id.* at 83-84]. He testified that he was satisfied after his research that 932 Sequatchie Mountain Road was the correct starting point for the target residence. [*Id.* at 216-217]. There is no indication that Officer Rittenberry was aware of any other street address for Mr. Dyer's residence at the time of the Affidavit.

Jerry Don Case, executive director of Marion County 911, likewise testified that families sometimes establish multiple residences on a single piece of property with a single 911 address. [Doc. 85 at 181, 183]. In fact, Officer Rittenberry's June 2023 inquiry into the 932 address prompted Marion County 911 to make changes to their own address designations. Specifically, Case testified that in June 2023, 932 Sequatchie Mountain Road was "sitting off down in some woods," but should have been assigned to Ms. Caldwell's residence, while 948 marked the shared driveway, but should only have marked "the smaller house up the hill," *i.e.* Dyer's residence. [Doc. 85 at 196 (referencing Government Exhibit 1); *id.* at 200]. Dyer's residence apparently had no separate numerical designation in the 911 system. [Doc. 85 at 207-8]. Mr. Case was asked what a search of the 911 system in June 2022 would have revealed. He testified that in June 2022, a 911 search of 932 Sequatchie Mountain Road would likely not have brought up either Dyer's house or his mother's, but the short gravel driveway 25 yards down the road. [*Id.* at 205]. Meanwhile, the street address for the intersection of the shared driveway and Sequatchie Mountain Road would "probably" have been 948 Sequatchie Mountain Road, Dyer's true address. [*Id.* at 199]. As a result of the post-Affidavit corrections by Mr. Case, Ms. Caldwell's house is now correctly designated as 932 Sequatchie Mountain Road and Mr. Dyer's residence is 948 Sequatchie Mountain Road. [*Id.* at 183-184].

The Court finds that Officer Rittenberry's erroneous identification of Dyer's address was not made with reckless disregard for the truth. Rittenberry consulted multiple sources before concluding that 932 Sequatchie Mountain Road identified a piece of property that contained two residences with a shared driveway. [Doc. 85 at 80]. The testimony of the executive director of Marion County 911 revealed that even the 911 system incorrectly identified the shared driveway as having a single address. That Officer Rittenberry included multiple descriptors in Exhibit B to ensure the exact location of Dyer's residence was identified is further evidence that he did not use the 932 address with reckless disregard for its accuracy. Under these circumstances, the Court sees little evidence that Rittenberry's identification of 932 Sequatchie Mountain Road as Dyer's address was made with reckless disregard for the truth.

Accordingly, Defendant's objection to the R&R is overruled as to the Magistrate Judge's findings regarding the 932 Sequatchie Mountain Road address. Defendant insists that Rittenberry was engaged in a "charade," that he knew that 932 did not identify Dyer's residence, knew that the address "had nothing to do with where he wanted to search," and "didn't believe the address described Dyer's residence." [Doc. 91 at 12, 14, 16, 20]. These characterizations are not supported by the evidence. Rittenberry clearly testified that 932 Sequatchie Mountain Road was but one of multiple descriptors used to identify a house that he believed shared a driveway and an address with another house. An address is not an immutable characteristic of a location. It is but one way to identify a location and will not always be sufficient. Though Rittenberry did not know the address he used was wrong, he knew it was imprecise. So, as he testified, he supplemented the 932 address with additional descriptors, including GPS coordinates that he matched to his visual observation of the controlled buy. It turns out he was wrong about the address, but there is no evidence that his error was reckless.

### *911 Address*

According to Defendant, "Rittenberry falsely wrote that he consulted the 911 system for the street address." [Doc. 91 at 12]. That is not what Rittenberry wrote. Exhibit B identifies the target residence and states: "The 911 address to the property shares a driveway with another residence." [Doc. 27-1 at 7]. At most, Rittenberry's statement could lead to the inference that he consulted the 911 system when in fact he did not.

The Court finds that this statement was not made with reckless disregard for the truth. Rittenberry testified that he believed that a street address and a 911 address were "one in the same." [Doc. 85 at 228]. And his testimony and Affidavit make clear that he did consult public records to obtain Dyer's street address. Defendant argues this belief is inexplicable and "strains the officer's credibility." [Doc. 91 at 12, 22]. This contention is wholly unpersuasive. Executive director Case testified that someone's 911 address and "street address" should, in fact, be the same, unless there was a mistake. [*Id.* at 194]. Likewise, a 911 address and postal address would be the same unless the person has a P.O. Box. [*Id.* at 192]. So Rittenberry's failure to recognize that a street address and a 911 address are not synonymous is not evidence of recklessness.

It turns out that this statement was probably not false when made. Mr. Case testified that in January 2022, the shared driveway was "probably" marked as 948 Sequatchie Mountain Road and there was no separate address for Dyer's home in the 911 records. The 911 address to the property likely did share a driveway with another residence after all, just not the address Rittenberry thought. So even if Rittenberry had consulted the 911 system, he would likely have had the same problem – one driveway, one address, and two residences.

### *Turn by Turn Directions*

There appears to be no dispute that when travelling from Sequatchie Mountain Road up

the shared driveway, Dyer's residence is further away from the road than indicated in Exhibit B. Exhibit B instructs officers to "[t]ake the gravel/dirt driveway approximately 300 yards until reaching the target residence in a wooded area." [Doc. 27-1 at 7]. Officer Rittenberry testified that he came up with the 300 yard approximation by using Google Maps to measure the distance from Sequatchie Mountain Road to Mr. Dyer's house. [Doc. 85 at 86-87].

The evidence at the hearing indicated that from Sequatchie Mountain Road, the turn for Ms. Caldwell's residence was approximately 175 yards up the driveway. [Doc. 85 at 18]. Travelling on the driveway from the road to the front steps of Mr. Dyer's residence is about 455 yards. [*Id.* at 26-27]. This estimate does not account for any boundary to Dyer's property, as it appears the shared driveway ended at his residence. There is a shed roughly 30 yards before Dyer's house at the end of the driveway. [Doc. 85 at 24; Def's Hrg. Ex. 17, pg. 7].

To obtain excision, a defendant has to show not only that a statement was false, but that it was intentionally false or made with reckless disregard for the truth. Defendant did not adduce any evidence to show that this error was made intentionally or with reckless disregard for the truth. Exhibit B states that the Defendant's residence is "approximately" 300 yards from the base of the driveway. That this estimate turned out to be shy of the true distance is not evidence of a reckless disregard for the truth.

### *"Followed" and "Monitored" Statements*

Defendant argues that agents did not actually follow or "monitor" the CS go to or leave Dyer's residence, as stated in the Affidavit, but only saw him pull into and then leave the driveway. [Doc. 91 at 7, 19-20]. First, the Affidavit states that agents followed the CS to Dyer's residence. [Doc. 27-1 at 3]. The evidence showed that agents did not actually follow the CS to Dyer's residence, but to the entrance to the driveway. However, this mistaken word choice is clarified by

the rest of the sentence – "and monitored the CS pull in the driveway." [*Id.*]. Read as a whole, the sentence conveys what happened imprecisely, but not falsely. Agents followed the CS to the *property* that contained the residence and then the CS pulled into the driveway. *See Franks*, 438 U.S. at 171 (holding that "[a]llegations of negligence or innocent mistake are insufficient" to warrant an evidentiary hearing).

As to the "monitoring" statements in paragraphs 4 and 6, the evidence showed that Officer Rittenberry did in fact monitor the CS leave Dyer's residence via live GPS tracking. [Doc. 85 at 211-212]. He testified that when he heard on the audio what he believed to be a drug deal, the GPS tracker showed the CS at the residence at the end of the driveway. [*Id.* at 217-218; Gov't Hrg Ex. 3A]. Therefore, Defendant has not shown by a preponderance of the evidence that these statements in the Affidavit was false.

To the extent the R&R does not explicitly find that the challenged statements were not intentionally false or made with reckless disregard for the truth, it will be modified. Specifically, the Court finds that none of the following statements were made with reckless disregard for the truth: (1) references to 932 Sequatchie Mountain Road as Dyer's address; (2) the reference to the 911 address in Exhibit B; (3) the turn-by-turn directions in Exhibit B; and (4) statements regarding agents monitoring the CS's location. Defendant's objection that the R&R fails to make factual findings regarding these statements is **SUSTAINED IN PART** and the R&R is hereby **MODIFIED** to reflect these explicit findings.

Defendant's objection that the R&R fails to recommend excisions to the Affidavit is **OVERRULED**. Having determined that the evidence does not support excisions from the Affidavit, the Court will assess the Motion to Suppress based on the Affidavit and search warrant application as it was submitted to the magistrate.

## VI.    MOTION TO SUPPRESS

Defendant's objection can be distilled into two central arguments in favor of suppression. First, Exhibit B is not part of the Affidavit, so the four corners of the Affidavit do not establish probable cause. Because the Exhibit and the Affidavit identify different locations, Defendant contends the nexus between criminal activity and the location to be searched is severed. Second, the Affidavit does not establish the reliability of the CS, so the CS's hearsay statements are insufficient to establish probable cause. According to Defendant, there was a single controlled buy, without independent police investigation, and no indicia of reliability of the CS. Defendant believes these purported deficiencies are fatal to the finding of probable cause. Finally, Defendant contends the good faith exception does not apply because there was no nexus between drug activity and Dyer's residence.

### a.  Incorporation of Exhibit B

The Fourth Amendment "requires particularity in the warrant, not in the supporting documents." *Groh v. Ramirez*, 540 U.S. 551, 557 (2004). This is because "'[t]he presence of a search warrant serves a high function,' and that high function is not necessarily vindicated when some other document, somewhere, says something about the objects of the search, but the contents of that document are neither known to the person whose home is being searched nor available for her inspection." *Id.* (quoting *McDonald v. United States*, 335 U.S. 451, 455 (1948)) (internal citation omitted). Yet even in the context of a particularity challenge to a warrant (rather than a challenge to the warrant's supporting documents), "most Courts of Appeals have held that a court may construe a warrant with reference to a supporting application or affidavit if the warrant uses appropriate words of incorporation, and if the supporting document accompanies the warrant." *Id.* at 557-58.

The United States Court of Appeals for the Sixth Circuit has explained: "'Incorporation' of one thing into another need not be by express 'reference.'" *United States v. Lazar*, 604 F.3d 230, 235 (6th Cir. 2010). "[T]he realities of administration of criminal justice counsel against an overly exacting standard for determining when a warrant successfully incorporates a supporting affidavit, and, hence, there are no required magic words of incorporation." *United States v. Abdalla*, 327 F. Supp.3d 1079, 1089 (M.D. Tenn. 2018) (citations omitted, cleaned up).

In *Lazar*, the warrant applications included, as part of the affidavit, Attachment A, describing the premises to be searched, and Attachment B, describing the items to be seized. 604 F.3d at 233. Attachment B listed: "Any documents . . . concerning the treatment of any of the below listed patients." *Id.* The warrant application packets included a list of patient names. *Id.* After the defendant filed a motion to suppress, the trial court found that the language of Attachment B did not suffice to incorporate a patient list into the affidavit and warrants. The Sixth Circuit disagreed and vacated the district court's suppression of the defendant's patient files.[2] The court explained that Exhibit B referred to "the below listed patients," so any patient list presented to the issuing magistrate judge was "effectively incorporated into the search warrants." *Id.* at 236. As long as the list was presented to the judge who issued the warrant, "a lack of formal incorporation by reference into warrants does not justify a finding of facial insufficiency." *Id.*

Given the "high function" of a search warrant, it follows that if language is sufficient to incorporate an exhibit into a warrant, it is sufficient to incorporate an exhibit into "supporting documents," for which there is no Fourth Amendment particularity requirement. Here, directly above Officer Rittenberry's signature on the Affidavit, he asks the court to issue a search warrant

---

[2] The matter was remanded for determination of which patient list was presented to the issuing Magistrate Judge in the warrant application packet. *Id.* at 238.

16

for the premises described in Exhibit B. [Doc. 27-1 at 4].[3] And there is other evidence of incorporation. Exhibit B is explicitly incorporated into the search warrant signed by Magistrate Raines. [*Id.* at 5]. Under the caption, Exhibit B identifies itself as "Exhibit 'B' to search warrant **and to the affidavit**." [*Id.* at 7 (emphasis added)]. The document's pagination format is "Page 4 of 8," etc., reflecting that the packet is a single document. There is also no dispute that the entire packet was presented to the issuing magistrate. Incorporation of Exhibit B also adheres to the rule that an "affidavit should be reviewed in a commonsense – rather than hypertechnical – manner." *United States v. Woosley*, 361 F.3d 924, 962 (6th Cir. 2004). Accordingly, the Court finds that Magistrate Judge Steger correctly considered Exhibit B in his analysis of the Affidavit and Defendant's objection is **OVERRULED** in this regard.

### b. Probable Cause

"Probable cause exists when there is a fair probability, given the totality of the circumstances, that contraband or evidence of a crime will be found in a particular place." *United States v. Brown*, 732 F.3d 569, 573 (6th Cir. 2013) (citations and internal punctuation omitted). "For an affidavit to establish probable cause, [Sixth Circuit] precedent requires the affidavit to contain a sufficient nexus between the evidence sought and the place to be searched." *United States v. Davis*, 970 F.3d 650, 665-66 (6th Cir. 2020). "A magistrate's determination of probable cause is afforded great deference by the reviewing court," *United States v. Greene*, 250 F.3d 471, 478 (6th Cir. 2001), and the "warrant must be upheld as long as the magistrate had a substantial basis for concluding that a search would uncover evidence of wrongdoing," *United States v. Lee*, 48 F. App'x 184, 186 (6th Cir. 2002) (citation omitted, cleaned up). Finally, the Supreme Court has often recognized that affidavits "are normally drafted by nonlawyers in the midst and haste of a

---

[3] Defendant's contention that the "Affidavit" does not include the conclusion and/or prayer is not supported by any legal citation and is unpersuasive.

criminal investigation." *Illinois v. Gates*, 462 U.S. 213, 235 (1983). So "[t]echnical requirements of elaborate specificity" do not apply to evaluating probable cause in a search warrant. *Id.*

The Affidavit states that agents checked the CS and his vehicle for contraband, and equipped him with a covert audio monitoring device. [Doc. 27-1 at 3]. They monitored the CS pull into Dyer's driveway and monitored the CS "have a conversation with Dyer regarding purchasing methamphetamine" via live audio monitoring. [*Id.*]. Agents monitored the CS leave Dyer's residence and debriefed the CS. [*Id.*]. The CS stated that Dyer had more methamphetamine in the residence than what he sold to the CS. [*Id.*]. What the CS told agents at the debriefing lined up with what they heard on the audio. [*Id.*]. The substance tested positive for methamphetamine with the Tru Narc drug identifier. [*Id.*]. The Affidavit further discloses that Dyer had four prior felony drug convictions and that a search of Marion County Sheriff's Department and Marion County Clerk's records listed 932 Sequatchie Mountain Road as his address. [*Id.*].

### i. Nexus Between Drug Activity and Defendant's Residence

Sixth Circuit precedent establishes "that a nexus exists between a known drug dealer's criminal activity and the dealer's residence when some reliable evidence exists connecting the criminal activity with the residence." *United States v. Westley*, No. 22-3356, 2023 WL 5377894, *6 (6th Cir. Aug. 22, 2023) (quoting *United States v. Gunter*, 266 F. App'x 415, 419 (6th Cir. 2008)). A drug transaction at a residence is 'inextricably connected to the residence for which the search warrant was sought." *United States v. Ellison*, 632 F.3d 347, 349 (6th Cir. 2011). In evaluating probable cause, the Court is "bound by the four corners of the affidavit" and "may not consider what the officer executing the warrant knew or believed." *United States v. Rose*, 714 F.3d 362, 367 (6th Cir. 2013).

Judge Steger found that probable cause existed for the search based on the following information in the Affidavit: (1) Defendant's status as a drug dealer; (2) the utilization of the CS to buy methamphetamine; (3) the visual monitoring of the GPS tracker to confirm the CS arrived at Defendant's residence; and (4) the debriefing with the CS. [Doc. 90 at 10-11]. Defendant contends that the Affidavit does not establish a nexus between the controlled buy and the location to be searched, because all the probable cause statements in the Affidavit refer to 932 Sequatchie Mountain Road. [Doc. 91 at 6]. Defendant also objects to the R&R's reliance on the hearsay statements of the CS, arguing the CS's basis of knowledge, veracity, and reliability are not established by the Affidavit. [*Id.* at 24-29].

A clarification is necessary before addressing Defendant's substantive objections. The R&R finds probable cause based in part on "the visual monitoring of the GPS tracker to confirm the CS arrived at the specific GPS coordinates for Defendant's residence." [Doc. 90 at 11]. However, this piece of evidence came out in testimony. Neither the Affidavit nor Exhibit B mention visual monitoring of the GPS tracker to confirm that the CS arrived at Dyer's residence. So while the Court finds that Exhibit B was incorporated into the Affidavit and warrant, nothing in the warrant application disclosed that officers monitored the CS's location during the controlled buy via live GPS tracking or that he was equipped with a GPS tracking device. Rather, the Affidavit states that agents "monitored the CS leave Dyer's residence." [Doc. 27-1 at 3]. The Report and Recommendation is **MODIFIED** in this regard.

Nonetheless, the Court finds that, based on the totality of the circumstances, there was a substantial basis for the issuing magistrate's finding of probable cause. The Sixth Circuit has "found a nexus between drug activity and the defendant's residence based on the defendant's record of past drug convictions coupled with recent, reliable evidence of drug activity." *United*

*States v. McCoy*, 905 F.3d 409, 418 (6th Cir. 2018); *United States v. Berry*, 565 F.3d 332, 339 (6th Cir. 2009) ("[T]here is support for the proposition that status as a drug dealer plus observation of drug activity near defendant's home is sufficient to establish probable cause to search the home."). As the Court has explained, Exhibit B particularly describes Dyer's residence as located at the GPS coordinates. According to the Affidavit, agents searched the CS for contraband before the controlled buy, monitored him pull into Dyer's driveway, and "monitored the CS leave DYER's residence." [Doc. 27-1 at 3]. The affiant heard the CS discussing a methamphetamine purchase with Dyer in real time and then recovered methamphetamine after the controlled buy. The Affidavit recites that Dyer had four prior felony drug convictions. The affiant also confirmed that it was in fact methamphetamine with Tru Narc drug identifier. All of this occurred within 72 hours of the Affidavit. The Court finds no error in the Magistrate Judge's determination that a nexus existed between drug activity and Dyer's residence and Defendant's objection is **OVERRULED**.

### ii. Reliability of the CS

Relatedly, Defendant contends that the Magistrate Judge erred in finding the CS was reliable and in considering the CS's hearsay statements. The Affidavit recites the hearsay statement of the CS that Dyer had more methamphetamine in the residence. The Affidavit is somewhat vague as to whether agents corroborated this specific detail. But immediately after stating that the CS reported there was more methamphetamine in the residence, the affiant states that "Agents corroborated the CS's debriefing with what was heard on live audio monitoring." [Doc. 27-1 at 3].

But an affiant may rely on information received through an informant, rather than his direct observations, "so long as the informant's statement is reasonably corroborated by other matters within the officer's knowledge." *United States v. Helton*, 314 F.3d 812, 819 (6th Cir. 2003) (quoting *Jones v. United States*, 362 U.S. 257 (1960)). Put differently, "in the absence of any

indicia of the informants' reliability, courts insist that the affidavit contain substantial police corroboration." *United States v. Jackson*, 470 F.3d 299, 307 (6th Cir. 2006) (quoting *United States v. Frazier*, 423 F.3d 526, 532 (6th Cir. 2005)). "This corroboration can be established by a police-monitored controlled purchase." *United States v. Smith*, 337 F. App'x 500, 504 (6th Cir. 2009); *see United States v. Henry*, 299 F. App'x 484, 486-487 (6th Cir. 2008) (collecting cases).

The Sixth Circuit's decision in *United States v. Smith*, 337 F. App'x 500 (6th Cir. 2009) is persuasive on this issue. There, "although the affidavit did not contain information as to the informant's reliability, it was based upon the officer's personal observations and control of the purchases that were conducted." *Id.* at 504. The affidavit stated that the CI was kept under "constant visual surveillance during the entire time" the CI was going to and from the target residence. *Id.* While the court found this statement "vague as to whether there was visual surveillance during the actual purchase," the court found that the totality of the circumstances supported probable cause. *Id.* at 505.

While Officer Rittenberry did not include information about the CS's reliability, he monitored the CS pull into the driveway, heard discussion of a drug transaction, monitored the CS leave Dyer's residence, and recovered drugs from the CS. As in *Smith*, the Court will not consider Rittenberry's testimony that he monitored the CS leave Dyer's residence via live GPS tracking, because this information was not included in his Affidavit. The Affidavit is vague as to *how* the affiant monitored the CS leave Dyer's residence, but affirmatively states that his departure was monitored. In the absence of other indicia of reliability, the Affidavit establishes the reliability of the CS by a police-monitored controlled purchase, as in *Smith*. Additionally, the hearsay statement that Dyer had more methamphetamine in the residence is immediately followed by the statement that "Agents corroborated the CS's debriefing with what was heard on live audio monitoring."

[Doc. 27-1 at 3]. While not conclusive, this strongly suggests the audio corroborated the CS's assertion that there were more drugs in the residence.

So this is not a case in which the affidavit fails to include facts that directly connect the residence with suspected drug activity. *See United States v. Reed*, 993 F.3d 441 (6th Cir. 2021) (noting generally no nexus to search a drug dealer's home when the affidavit "fails to include any facts that directly connect the residence with the suspected drug dealing activity, or the evidence of this connection is unreliable"). Because Dyer's residence was particularly identified in Exhibit B, police heard a drug transaction, and police monitored the CS leave "Dyer's residence," as opposed to his driveway or his mother's house, the Court finds a sufficient nexus between Dyer's criminal activity and the location to be searched.

Defendant appears to contend that the affiant was only entitled to rely on those statements of the CS that were independently corroborated. He argues, for example, that the recovery of methamphetamine does nothing to establish Dyer's identity as the seller. [Doc. 91 at 28]. True enough. But the critical question is not whether the affiant has corroborated every statement of the CS. Indeed, "independent corroboration of a confidential informant's story is not a *sine qua non* to a finding of probable cause." *United States v. Frazier*, 423 F.3d 526, 532 (6th Cir. 2005). The affidavit need only contain "substantial police corroboration," not independent corroboration of every detail of the CS's account. *See id.*

Defendant also argues that the Affidavit does not establish a basis of knowledge for the CS's identification of Dyer as the person who sold him methamphetamine. [Doc. 91 at 26-28]. A similar argument was made in *United States v. Pinson* – defendant argued the Affidavit did not have a name or a description of the person from whom the confidential informant purchased drugs. 321 F.3d 558, at 564 (6th Cir. 2003). The Sixth Circuit held that "an affidavit in support of a search

warrant does not need to name or describe the person who sold the drugs or name the owner of the property." *Id.* This is because "search warrants are not directed at persons; they authorize the search of 'places' and the seizure of 'things,' and as a constitutional matter they need not even name the person from whom the things will be seized." *Id.* (quoting *Zurcher v. Stanford Daily*, 436 U.S. 547, 556 (1978)). Arguably, this principle applies with somewhat less force here because Dyer's history of drug dealing provides part of the basis for the Court's probable cause determination. It nonetheless demonstrates that even a wholesale failure to identify a seller in a controlled buy is not necessarily fatal to a search warrant.

The Supreme Court has repeatedly explained that "after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of de novo review." *Illinois v. Gates*, 462 U.S. 213, 236 (1983). Rather, the magistrate's determination of probable cause is afforded "great deference." *Id.* Under this standard, the Court finds that the totality of the circumstances provides a substantial basis for the issuing magistrate's finding of probable cause. Defendant's objection to the R&R's probable cause finding is **OVERRULED**.

### c. Good Faith Exception

Despite this finding, Defendant's suppression motion presents a fairly close question. In many respects, it falls within a grey area between various Sixth Circuit cases. As the Sixth Circuit has recognized, "[c]ourts have drawn fine lines between cases with little to distinguish those that find probable cause from those that do not." *United States v. Reed*, 993 F.3d 441, 449-450 (6th Cir. 2021) (declining to rule on probable cause where case sat "on the hazy constitutional border between sufficient nexus and insufficient hunch") (internal citation omitted). While the Court finds there was probable cause for the issuance of the search warrant, in the alternative, the good-faith exception applies and suppression is not appropriate.

Generally, a trial court must exclude incriminating evidence if police violated the Fourth Amendment when discovering the evidence. *Reed*, 993 F.3d at 450. But "[t]he exclusionary rule does 'not bar the government's introduction of evidence obtained by police officers acting in objectively reasonable reliance on a search warrant that is subsequently invalidated." *United States v. McPhearson*, 469 F.3d 518, 525 (6th Cir. 2006) (quoting *United States v. Laughton*, 409 F.3d 744, 748 (6th Cir. 2005)). The purpose of the exclusionary rule is to deter unlawful police conduct, so where the officer's conduct is objectively reasonable, excluding evidence will not further this purpose. *United States v. Leon*, 468 U.S. 897, 920-21 (1984)). Suppression is limited "to circumstances in which the benefits of police deterrence outweigh the heavy costs of excluding 'inherently trustworthy tangible evidence' from the jury's consideration." *United States v. White*, 874 F.3d 490, 496 (6th Cir. 2017) (quoting *Leon*, 468 U.S. at 907). "Searches pursuant to a warrant will rarely require any deep inquiry into reasonableness, for a warrant issued by a magistrate normally suffices to establish that a law enforcement officer has acted in good faith in conducting the search." *Leon*, 468 U.S. at 922 (internal citations omitted, cleaned up).

Accordingly, the good faith inquiry "is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *Id.* (quoting *Leon*, 468 U.S. at 922-23). The exception does not apply in four instances: (1) when the affidavit supporting the search warrant contains a knowing or reckless falsity; (2) when the issuing magistrate wholly abandoned their judicial role; (3) when the affidavit is so lacking in indicia of probable cause that a belief in its existence is objectively unreasonable; and (4) when the warrant is so facially deficient that it cannot be reasonably presumed valid. *Laughton*, 409 F.3d at 748 (citing *Leon*, 468 U.S. at 914-23).

24

Here, Defendant argues that the Affidavit failed to establish even a minimal nexus between Dyer's residence and any evidence of wrongdoing that would support probable cause. [Doc. 91 at 31]. According to Defendant, there is no connection between the statements supporting probable cause and the place identified by the GPS coordinates, because all probable cause statements relate to 932 Sequatchie Mountain Road.

First, the Affidavit provides more than mere conclusions or suspicions and is not a bare bones affidavit. A "bare bones" affidavit "is one that merely states suspicions, beliefs, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge." *United States v. Westley*, No. 22-3356, 2023 WL 5377894, *6 (6th Cir. Aug. 22, 2023) (citation omitted, cleaned up). The Affidavit recites that Dyer has four prior drug convictions and details a controlled purchase of methamphetamine by a CS from Dyer that was, at the very least, near Dyer's residence.

In the alternative, the Affidavit provides a minimally sufficient nexus between Dyer's residence and drug activity. The good-faith exception applies where the affidavit contains a "minimally sufficient nexus" between the illegal activity and the place to be searched to support an officer's good faith belief in the warrant's validity, even if the information is not enough to establish probable cause. *McPhearson*, 469 F.3d at 526. Application of the good-faith exception here is also consistent with the purpose of the exclusionary rule, which is designed to deter police misconduct. "Rather than fears of police misconduct, this case merely raises concerns about sloppiness in drafting affidavits . . .." *United States v. Rose*, 714 F.3d 362, 368 (6th Cir. 2013) (applying good faith exception to affidavit that failed to provide any address for the defendant's residence). Officer Rittenberry's conduct was not "sufficiently deliberate that exclusion can

meaningfully deter it" or "sufficiently culpable that such deterrence is worth the price paid by the justice system." *Herring v. United States*, 555 U.S. 135, 144 (2009).

## VII.   CONCLUSION

Accordingly, Defendant's Objection [Doc. 91] to the Report and Recommendation [Doc. 90] is **SUSTAINED IN PART** and **OVERRULED IN PART** as set forth herein. The Report and Recommendation [Doc. 90] is **MODIFIED IN PART** as follows:

- The Court finds that the challenged statements in the Affidavit were not false statements made with reckless disregard for the truth and therefore excision is not appropriate; and

- The Affidavit does not state there was visual monitoring of the GPS tracker to confirm that the CS arrived at the specific GPS coordinates for Defendant's residence.

As modified by this Memorandum Opinion and Order, the Report and Recommendation [Doc. 90] is **ACCEPTED AND ADOPTED**. The search warrant is **VALIDATED** and Defendant's Motion to Suppress [Doc. 27] is **DENIED**.

SO ORDERED.

*/s/ Charles E. Atchley, Jr.*
**CHARLES E. ATCHLEY, JR.**
**UNITED STATES DISTRICT JUDGE**

26